Case 4:05-cv-00073-SEH Document 21 Filed 04/11/06 Page 1 of 15

FILED
GREAT FALLS DIV.

'06 APR 11 AM 11 48

PATRICK E. DUFFY, CLERK

_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| ALICE BROWN, | Cause No. CV 05-73-GF-CSO |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| STATE OF MONTANA; DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES CHILD AND FAMILY SERVICES DIVISION; SHAWN WILLS, | |
| Defendants. | |

On July 28, 2005, Plaintiff Alice Brown filed this action alleging that her constitutional rights were violated when her newborn son was removed from her care for a period of twelve days immediately following his birth.[1] Brown is proceeding pro se.

On October 31, 2005, Defendants filed an Answer and a motion

---

[1] D. Mont. L.R. 1.8(a)(2) provides that "If the involvement of a minor child must be mentioned, only the initials of that child shall be used." The parties are advised that their filings and exhibits must continue to comply with this rule. The parties should file redacted versions of documents containing information protected under the Rule and simultaneously file an unredacted document under seal. See D. Mont. L.R. 1.8(c).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

for summary judgment. Brown responded on November 17, 2005, at which time she also filed a motion to set a jury trial. Defendants responded to Brown's motion and filed their reply on November 28, 2005.

## I. Allegations of Brown's Complaint

Brown contends that, on July 28, 2003, Defendant Wills, a social worker for the Child and Family Services Division of Montana's Department of Public Health and Human Services, entered Brown's hospital room in Great Falls with two armed police officers. Wills told Brown that Brown's newborn son was being taken into custody and Brown would not be permitted to hold him, touch him, or see him. Wills gave Brown a document titled "Notification to Parent." The Notification listed "Open Case in Alaska - Case seeking termination findings" and "Physical Limitations that may lead to physical Neglect" as reasons for the child's removal. *See* "Notification," attached to Compl. When Brown inquired as to the meaning of the second reason, Wills told her that a nurse had reported that Brown was unable to hold her newborn baby boy for longer than ten minutes because she was obese. Brown demanded "an opportunity to disprove the allegation by holding my baby in my arms for as many hours as it takes to prove that I can hold my baby for longer than ten minutes." Compl. (Court's doc. 1) at 4. Wills did not investigate the allegation or ask Brown any questions. Brown says she was also informed that the

"open case in Alaska" did not pertain to her newborn son. Id. at 3-4.

On August 8, 2003, the Honorable Julie Macek of Montana's Eighth Judicial District Court ordered the immediate return of Brown's child. Judge Macek found that there was not sufficient evidence to substantiate Brown's abuse or neglect of the infant or a risk of future abuse or neglect. Id. at 6-7.

Brown alleges that Wills violated the Fourth Amendment by taking the child "without a court order, search warrant, probable cause, emergency need, or my consent." She also alleges violations of the Due Process Clause of the Fifth and Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., various provisions of Title 18 of the United States Code, and 2 U.S.C. § 1311. Id. at 5-6.

For her relief, Brown requests $400.00 in compensatory damages and $4,000,000.00 in punitive damages.[2]

---

[2] Defendants correctly point out, see Answer (Court's doc. 6) at 4, that the 10,000:1 ratio between the punitive and compensatory damages requested by Brown is questionable. See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003). "Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct," id. at 416 (internal quotation marks omitted), including, in this context, the value of the constitutional right allegedly violated, emotional distress, and the like, as well as expenses incurred as a result of the defendant's conduct. "By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution." Id. Although it declined to announce a bright-line rule, the Campbell Court opined that "in practice, few awards exceeding a single-digit ratio between punitive and

## II. Summary Judgment Standards

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including her own), depositions, answers to interrogatories, and admissions. Only disputes over facts that

---

compensatory damages, to a significant degree, will satisfy due process." Id. at 425. However, because a detailed consideration of the evidence is required, this is not the sort of issue that can be addressed at the outset of a case.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. Id.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. However, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the Court must construe the pleadings liberally and afford the pro se litigant the benefit of any doubt. Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

## III. Analysis

The Defendants argue that they are entitled to immunity from suit on various grounds.

### A. Eleventh Amendment Immunity

Defendants argue that the State of Montana, the Department of Public Health and Human Services, and the Child and Family Services Division are all immune from suit for damages under the Eleventh Amendment of the Constitution. They also argue that Wills, in her official capacity, has the same immunity.[3]

---

[3] Brown sues Wills in both her official and her individual capacity. See Compl. at 5. It is not clear that Wills has an

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

The United States Supreme Court holds that Congress did not intend § 1983 to apply to States or to arms of the State, so such entities are not "persons" subject to suit within the meaning of 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001). The Eleventh Amendment gives the State and arms of the State sovereign immunity from suit for money damages in federal court. Quern v. Jordan, 440 U.S. 332, 338-45 (1979) (holding that § 1983 does not override a State's Eleventh Amendment immunity).

Brown argues that the State and its subdivisions are not immune from suit under 42 U.S.C. §§ 2000d et seq., Title 18 of the United States Code, or 2 U.S.C. § 1311. See Pl.'s Objection and Opposition (Court's doc. 15) at 7. While Brown is correct that the States lack Eleventh Amendment immunity under Title VI of the Civil Rights Act, see 42 U.S.C. § 2000d-7(a), her Complaint does not allege that the State illegally discriminated against her on the basis of her race, color, or national origin, id. § 2000d. She cannot proceed under Title 18 of the United States Code because 18 U.S.C. §§ 241, 242, and 1201 define criminal offenses that do not give rise to private causes of action, Aldabe v. Aldabe, 616 F.2d

---

"official capacity." The Court has no information to suggest that she is in a policy-making position or that she has the authority to bind the State by her actions. Regardless, it is clear that, to whatever extent Wills has an official capacity, Brown cannot proceed against her.

1089, 1092 (9th Cir. 1980) (per curiam), and private persons such as Brown have no legally cognizable interest in the prosecution of others, <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973). As for 2 U.S.C. § 1311, it provides a remedy to Congressional employees who suffer illegal discrimination in a personnel action. It has no bearing on Brown's case.

The Court can only conclude that the Eleventh Amendment bars Brown from proceeding in federal court with claims for money damages against the State of Montana, the Department of Public Health and Human Services, the Child and Family Services Division, and Wills in her official capacity. Those Defendants should be dismissed.

**B. Defendant Wills**

Brown also sues Defendant Wills in her individual capacity. <u>See</u> Compl. at 5.

### 1. Absolute Quasi-Prosecutorial or Judicial Immunity

Absolute immunity "depend[s] on the particular function performed rather than on whether the state officer's position had a general relationship to a judicial proceeding." <u>Miller v. Gammie</u>, 335 F.3d 889, 892 (9th Cir. 2003) (en banc). "The burden is on the official claiming absolute immunity to identify the common-law counterpart to the function that the official asserts is shielded by absolute immunity." <u>Id.</u> at 897.

Absolute immunity shields only those who perform a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

> function that enjoyed absolute immunity at common law. Even actions taken with court approval or under a court's direction are not in and of themselves entitled to quasi-judicial, absolute immunity. Instead, to enjoy absolute immunity for a particular action, the official must be performing a duty functionally comparable to one for which officials were rendered immune at common law. Therefore, a prosecutor's submission of an affidavit to the court as a witness, as in Kalina, or a court reporter's preparation of a transcript for the court, as in Antoine, were not absolutely immune because those functions were not absolutely immune at common law.

Id. (citing Kalina v. Fletcher, 522 U.S. 118 (1997), and Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993)).

Social workers are entitled to absolute immunity "in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Meyers v. Contra Costa County Dep't of Soc. Servs., 812 F.2d 1154, 1157 (9th Cir. 1987). However, prosecutors do not have absolute immunity when they are acting as police officers or detectives, see, e.g., Burns v. Reed, 500 U.S. 478, 495 (1991) (declining to recognize absolute immunity of prosecutor in advising police about propriety of hypnotizing suspect and about existence of probable cause), nor do they have absolute immunity when they file an affidavit "personally vouch[ing] for the truth of the facts set forth," even if the affidavit is filed in support of the initiation of judicial proceedings, see Kalina, 522 U.S. at 130-31. Only qualified immunity might apply to such functions.

Wills was not acting in a quasi-prosecutorial capacity when

she decided to investigate hospital staff's allegations concerning Brown's disability, when she sought and obtained information from Alaska regarding child protection proceedings there, when she interviewed Brown at the hospital with two armed police officers, when she took custody of the newborn baby on behalf of the State, or when she filed an affidavit in state court asserting the truth of various matters in a sworn statement.[4] Those functions are analogous to functions performed by investigators, police officers, or complaining witnesses, not prosecutors. Compare, e.g., Doe v. Lebbos, 348 F.3d 820, 823-24, 826 (9th Cir. 2003) (social worker who prepared petition based on information gathered by others entitled to absolute quasi-prosecutorial immunity); Mabe v. San Bernardino County, 237 F.3d 1101, 1109 (9th Cir. 2001) (social worker's supervisor, who prepared petition based on information gather by her supervisee, entitled to absolute immunity). Wills is not entitled to absolute quasi-prosecutorial immunity for the actions alleged in Brown's Complaint.

Wills is entitled to absolute immunity for continuing the baby's legal custody with the Department after Judge Macek authorized such custody. However, Brown's Complaint does not allege claims based on Wills' performance of that function.

---

[4] Brown's response to the motion for summary judgment alleges that Wills "commit[t]ed fraud, fraud upon the court, [and] misrepresentation." Pl.'s Objection (Court's doc. 15) at 7. Those allegations are not contained in her pleading.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

Finally, Judge Macek's determination in the July 31 Order cannot retroactively impute judicial immunity to Wills' actions. Wills took the child into custody based on her own decision at the hospital. She was not acting pursuant to a court order. See Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991) ("Because the defendants were not acting under the supervision of a court, it is the qualified immunity standard, rather than the absolute immunity standard, which must govern their conduct."); Mabe, 237 F.3d at 1108 n.2 ("The record supports a finding of probable cause .... However, a showing of probable cause does not ... justify a warrantless removal."). Additionally, Judge Macek's order was based, in part, on information that apparently came to Wills only after she had already taken custody of the baby; the Alaska petition was received on July 29, 2003, not July 28. See Am. Pet. for Adjudication of Children [sic] in Need of Aid and for Temporary Placement at 1, In the Matter of J.B., No. 3PA 02-37B CP (Alaska 3d Jud. Dist. undated) ("Alaska Pet.") (showing "received" stamp dated July 29, 2003), attached to Wills Aff. (Court's doc. 13).[5]

In sum, while the general outline of the procedure - that is, taking custody of the child first and asking Judge Macek for an order later - is not necessarily unlawful, it does not reach backward to provide Wills with absolute immunity from suit under §

---

[5] Contrary to D. Mont. L.R. 7.2, the exhibits attached to Wills' affidavit are not labeled.

1983 based on functions she performed before Judge Macek became involved. Nor does the legality of the general procedure under state law have any bearing on the question of whether Wills had legal cause to take custody of Brown's newborn baby. Judge Macek's Order of July 31 is not relevant to the determination of Wills' immunity for actions taken before the petition was filed and the order was issued.

### 2. Qualified Immunity

Defendants also argue that Wills is entitled to qualified immunity. To determine whether qualified immunity applies, the Court must consider, first, whether the facts alleged by the plaintiff, "taken in the light most favorable to the party asserting the injury," show that the defendant violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answer to that question is no, the defendant is entitled to summary judgment. If the answer is yes, then the next question is whether the constitutional right in question was "clearly established" at the time the defendant allegedly violated it. Id. The right must have been "clearly established" in a "particularized" sense; "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202. Thus, the Court must consider the particular facts of the case to determine whether a reasonable social worker could have believed that her

actions were lawful. The Court must consider the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken," Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotation marks omitted); a defendant's subjective thoughts about the action are not relevant, but the information she had and the reasonableness of the inferences she drew from it are relevant. An action for damages will lie only if "a reasonable official" would have understood that what she did violated the plaintiff's rights. Id. at 615 (discussing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Finally, because "a statute ... authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable officer would find that conduct constitutional," Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994), the Court must also consider whether authority conferred by state law would lead a reasonable social worker to believe that Wills' actions were lawful.

### (a) Allegation of a Constitutional Violation

Brown's Complaint alleges, in essence, that Wills removed her child from her custody even though Wills had no reason to believe that the newborn was in immediate or apparent danger of being harmed. The Due Process Clause of the Fourteenth Amendment

"guarantees more than fair process."[6] Troxel v. Granville, 530 U.S. 57, 65 (2000). Due process "includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." Id.

"The liberty interest at issue in this case - the interest of parents in the care, custody, and control of their children - is perhaps the oldest of the fundamental liberty interests" recognized and protected by the United States Supreme Court under the Due Process Clause of the Fourteenth Amendment. Id.; see also id. at 65-66 (citing, inter alia, Meyer v. Nebraska, 262 U.S. 390, 399 (1923); Pierce v. Society of Sisters, 268 U.S. 510, 534-535 (1925); Stanley v. Illinois, 405 U.S. 645, 651 (1972); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972); Washington v. Glucksberg, 521 U.S. 702, 720 (1997)).

The State also has an interest in the health and welfare of children. See Woodrum v. Woodward County, 866 F.2d 1121, 1125 (9th

---

[6] The State's apparent reliance on post-deprivation process, see, e.g., Defs.' Br. at 7-8, 11, is misplaced. The post-deprivation remedy rule "does not apply where deprivation is predictable, pre-deprivation process is not impossible, and the defendants are specifically charged with the authority to effect the deprivation charged." Armendiaz v. Penman, 31 F.3d 860, 866 (9th Cir. 1994) (citing Zinermon v. Burch, 494 U.S. 113, 137-38 (1990)), vacated in part on reh'g en banc, 75 F.3d 1311, 1316 (9th Cir. 1996). See also Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002) ("a deprivation ... caused by conduct pursuant to established state procedure, rather than random and unauthorized action, does state a § 1983 claim.") (internal quotation marks omitted) (ellipsis in original).

Cir. 1989),[7] cited in Defs.' Br. at 7. Montana expressly declared its interest in "ensur[ing] that there is no forced removal of a child from the family based solely on an unsubstantiated allegation of abuse or neglect." Mont. Code Ann. § 41-3-101(1)(e) (2001).[8] There is no question that "neglectful parents may be separated from their children." Stanley, 405 U.S. at 652. The question in this case is "whether the means used to achieve [the State's] ends are constitutionally defensible." Id.

Brown's Complaint alleges that her right to due process was violated by Wills' taking custody of her newborn child. Wills does not claim that she obtained prior judicial authorization or that she did not take custody of the child. The post-deprivation remedy rule, see note 7 supra, has no application here. Wills did not "negligently" take custody of Brown's baby, see Defs.' Br. at 8; she did so deliberately. Brown asserts that Wills acted "without a court order, search warrant, probable cause, emergency need, or

---

[7] In Woodrum, the court considered a situation where a court authorized the State to take temporary custody of a child. See id. at 1123.

[8] This statute and others discussed in this Order were amended in 2003, but the amendments were not effective until October 1, 2003, two months after Wills took custody of Brown's baby. Since the volumes of the Montana Code Annotated are published only in odd-numbered years, the 2001 version of the Code is used here.

my consent." Compl. at 5.[9] She fairly states a claim for a violation of her right to due process under the Fourteenth Amendment.

### (b) Clearly Established Law

> Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.

Mabe, 237 F.3d at 1106 (quoting Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000)) (internal quotation marks omitted). The Wallis court elsewhere formulated the applicable test in this way: "the state may not remove children from their parents' custody without a court order unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." 202 F.3d at 1138. "Moreover, the police cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued, particularly where it is not clear that a crime has been - or will

---

[9] Brown asserts a violation of her Fourth Amendment rights in connection with these acts. The Defendants, however, have read her Complaint as asserting a due process claim under the Fourteenth Amendment, and her Complaint in fact asserts a Fourteenth Amendment claim immediately prior to this description of Wills' actions. Additionally, the Court must liberally construe pro se pleadings. Regardless of whether Brown correctly identified the right in question, her factual allegations appear to bring the claim within the purview of Fourteenth Amendment.